Ben FARRIS, Jr., Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 91–CA–1677–MR.

Court of Appeals of Kentucky.

July 17, 1992.

Oleh R. Tustaniwsky, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Ann Louise Cheuvront, Asst. Atty. Gen., Frankfort, for appellee.

Before LESTER, C.J., and JOHNSON and SCHRODER, JJ.

JOHNSON, Judge.

This is an appeal from the conviction of defendant/appellant Ben Farris, Jr., in Shelby Circuit Court on two counts of trafficking in a Schedule II controlled substance (cocaine) in violation of KRS 218A.140. Farris was sentenced to two five-year terms of imprisonment to run concurrently. Farris alleges five errors by the trial court, to-wit: (1) the trial court erred by failing to direct a verdict of acquittal; (2) the trial court erred when it refused to give defendant an instruction on the defense of entrapment; (3) the trial court erred when it refused to give an instruction on the lesser included offenses of possession of a controlled substance (cocaine) and criminal facilitation; (4) the trial court erred in refusing to strike for cause a juror who was the Assistant County Attorney of Shelby County; and (5) the trial court erred in refusing to grant a continuance in order to allow the appellant to obtain the testimony of a witness. We agree with the appellant as to issues (2) and (3), and reverse the conviction and remand for further proceedings.

On September 13, 1990, Kentucky State Police Detective Tony Young accompanied by Terry Scales, a confidential informant, (who was getting paid $50 for each arrest she helped set up) drove to the intersection of College and Tenth Streets in Shelbyville in an attempt to locate appellant. Young, operating under the guise of being Ms. Scales' brother, and Ms. Scales were approached by an unidentified male who asked them if they were interested in buying cocaine. Detective Young declined the offer and stated that he was trying to locate appellant. Detective Young and Ms. Scales then drove to and parked in front of a house on College Street where appellant resided. Detective Young asked a person seated on the front porch of the house to locate appellant. Subsequently, appellant came out of the house and approached the car. At approximately the same time, the unidentified male arrived on the scene renewing his offer to sell cocaine. The facts are in dispute as to what took place next. Per Detective Young's testimony, he stated that he did not want to conduct business with the unidentified male, so he gave $125.00 to appellant to purchase cocaine. Appellant and the unidentified male left the area and later returned with the drugs. Appellant concluded the transaction by handing the drugs to Detective Young. According to appellant, the unidentified male entered into the transaction with Detective Young to get the cocaine; and appellant's role was limited to preventing the unidentified male from absconding with the money. Appellant admits that he transferred the drugs, but appellant denies handling any money.

The second transaction occurred on September 17, 1990. Detective Young, Ms. Scales, and appellant met in the parking lot of a small convenience grocery store. The meeting had been prearranged by Ms. Scales. At that time Detective Young gave appellant $135.00 to secure some cocaine. Appellant once again left the scene and then returned to deliver the drugs. Appellant testified that during the second incident he did handle the money, and the cocaine was purchased from an unidentified bicyclist who happened to pass by the parking lot during the meeting.

Appellant contends that he and Ms. Scales had had a romantic relationship for three or four months, and that his desire to please Ms. Scales was the sole cause for his participation in the transfer of the cocaine. He testified that he and Ms. Scales had never used cocaine together; that he had

never delivered cocaine to anyone else; that he only knew where to look for cocaine because he had previously used cocaine; and that he received no money or any other benefit from these two transfers (other than pleasing Ms. Scales).

■ Since a directed verdict of acquittal would dispose of this case, we address that issue first. Viewing the evidence in the light most favorable to the Commonwealth, we believe that the totality of the evidence was such that reasonable minds might fairly find appellant guilty beyond a reasonable doubt. *Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3 (1983). For appellant to be entitled to a directed verdict we would have to conclude that reasonable minds could not fairly reject his defense of entrapment. This defense is based on appellant's own testimony that he had never transferred drugs before; that he only knew where to locate the cocaine because of his own prior usage; that he received no benefit from his participation in the transfer other than satisfying Ms. Scales for whom he had "feelings"; and that but for the inducement or encouragement from Ms. Scales acting on behalf of the Commonwealth, he would not have participated. Clearly, a reasonable mind could fairly reject any or all of these contentions. The trial court's refusal to grant a directed verdict of acquittal was not error.

■ We next address the issue of entrapment. Kentucky Revised Statutes (KRS) 505.010 provides for the defense of entrapment. The statute reads as follows:

(1) A person is not guilty of an offense arising out of proscribed conduct when:

(a) He was induced or encouraged to engage in that conduct by a public servant or by a person acting in cooperation with a public servant seeking to obtain evidence against him for the purpose of criminal prosecution; and

(b) At the time of the inducement or encouragement, he was not otherwise disposed to engage in such conduct.

(2) The relief afforded by subsection (1) is unavailable when:

(a) The public servant or the person acting in cooperation with a public serv-

ant merely affords the defendant an opportunity to commit an offense; or

(b) The offense charged has physical injury or the threat of physical injury as one of its elements and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

(3) The relief provided a defendant by subsection (1) is a defense.

The Kentucky Supreme Court in *Brown v. Commonwealth,* Ky., 555 S.W.2d 252, 257 (1977), stated, "... in order for the defense to be raised, so as to call for an instruction placing the burden on the Commonwealth, there must be something in the evidence reasonably sufficient to support a doubt based on the defense in question.... Once there is evidence sufficient to create a doubt, yes—then the state has the burden of proof and there must be an instruction so casting it."

Clearly, the testimony of appellant that he had never transferred drugs before; that he only knew where to locate the cocaine because of his own prior usage; that he received no benefit from his participating in the transfer other than satisfying Ms. Scales for whom he had "feelings" support his defense that "[h]e was induced or encouraged to engage in (the transfer of the cocaine).... by a person acting in cooperation with a public servant seeking to obtain evidence against him for the purpose of criminal prosecution; and [a]t the time of the inducement or encouragement, he was not otherwise disposed to engage in such conduct." KRS 505.010(1)(a) and (b).

Accordingly, it would be reasonable for a jury to believe that for the mere purpose of instituting a criminal prosecution against him that appellant had been induced to commit a crime not contemplated by him. *Delaney v. Commonwealth,* Ky., 520 S.W.2d 747, 748 (1975). We hold that the trial court erred in refusing to give the entrapment instruction requested by appellant because as a matter of law the evidence presented supported the giving of the instruction. *Jewell v. Commonwealth,* Ky., 549 S.W.2d 807 (1977), *overruled on*

*other grounds by, Payne v. Commonwealth,* Ky., 623 S.W.2d 867 (1981). "The question of whose mind initiated the criminal intent should be left to the jury, and it appears that [Farris] has presented a plausible defense, especially since he has no history of trafficking in drugs." *Sebastian v. Commonwealth,* Ky.App., 585 S.W.2d 440, 441 (1979).

■ We further hold that the trial court erred in not giving the instruction on the two lesser included offenses of possession of a controlled substance (cocaine) and criminal facilitation. Clearly, possession is a lesser included offense of trafficking. *Jackson v. Commonwealth,* Ky., 633 S.W.2d 61, 62 (1982); and criminal facilitation, likewise, is an offense that "is established by proof of the same or less than all the facts required to establish the commission of the greater offenses." *Id.* at 62.

We are mindful of the argument that the defense of entrapment constitutes an admission of the alleged conduct and thereby as to the principal offense extinguishes the theories of a lesser included offense. However, it is possible, as in this case, that the defense of entrapment can be asserted against the elements of the lesser included offenses, while the defendant continues to deny commission of all the elements of the principal offense. In other words, appellant can consistently claim that he was entrapped to possess cocaine or aid in its transfer without admitting that he trafficked in cocaine.

This case once again presents the situation where the Commonwealth objected to instructions requested by the defendant, and the trial court ruled favorably to the Commonwealth. We feel compelled to point out that many reversals such as this case could be avoided if the Commonwealth would be more reasonable in its position on instructions, and if the trial courts would allow more latitude in the giving of instructions requested by defendants.

■ We now address the issue of whether the trial court erred in failing to strike for cause juror number 75, Michael Harrod. Harrod was serving as Assistant County Attorney for Shelby County at the time of the alleged offense up to and including the time of the trial. During voir dire Harrod answered all the questions [1] including the "magic question" [2] correctly, although he did concede that he had worked professionally with the Commonwealth Attorney and the Assistant Commonwealth Attorney who was prosecuting the case, and was a personal friend of the trial judge.

The issue in this case is not whether Harrod was being truthful in his answers. We do not question his truthfulness, or his willingness to be a fair and impartial juror. The issue is one of implied bias.

In *Godsey v. Commonwealth,* Ky.App., 661 S.W.2d 2 (1983) the Kentucky Court of Appeals held that the trial court committed reversible error in failing to grant defendant's challenge for cause as to a prospective juror who, though at the time of the trial no longer held the position, had been county attorney when the defendant's preliminary hearings on the charges proceeded to the district court even though he did not personally prosecute the case but had the overall responsibility to do so. Despite the juror responding to voir dire questions indicating that he was not familiar with the case then or when it was pending in district court; that he would not have any bias or prejudice against the defendant; and that he had long ago put aside the fact that he

---

1. Harrod stated that he had never participated in this case in any way and that he knew nothing about the case. He stated that he had never heard anyone talk about the case and that as a prosecutor it would not cause him any problems to sit on the case. He stated that it would not embarrass him nor cause him any problems with anyone that he worked with to reach a verdict of not guilty.

2. "One of the myths arising from the folklore surrounding jury selection is that a juror who has made answers which would otherwise disqualify him by reason of bias or prejudice may be rehabilitated by being asked whether he can put aside his personal knowledge, his views, or those sentiments and opinions he has already, and decide the case instead based solely on the evidence presented in court and the court's instructions. This has come to be referred to in the vernacular as the 'magic question'." *Montgomery v. Commonwealth,* Ky. 819 S.W.2d 713, 717 (1992).

had been county attorney, the court held that the trial court's refusal to strike the juror for cause was error.

"Even where jurors disclaim any bias and state that they can give the defendant a fair trial, conditions may be such that their connection would probably subconsciously affect their decision in the case. It is always vital to the defendant in a criminal prosecution that doubt of unfairness be resolved in his favor." *Randolph v. Commonwealth*, Ky., 716 S.W.2d 253, 255 (1986). And, just as in *Randolph* where "[i]t [was] obvious that an implied bias challenge [did lie] against juror Miller because her position as secretary for the Commonwealth's Attorney gives rise to a loyalty to her employer that would imply bias;" here, it is equally as obvious that an implied bias challenge lies against Juror Harrod because his position as a prosecutor for the Commonwealth gives rise to a loyalty to his employer, the Commonwealth, that would imply bias. "It is the possibility of bias or prejudice that is determinative in a ruling on a challenge for cause." *Id.* at 255–256.

■ Despite the abuse of discretion that we feel occurred in the trial court not striking Juror Harrod for cause, the appellant did not even attempt to demonstrate that the use of a peremptory challenge on Juror Harrod "resulted in a subsequent inability to remove further unacceptable jury panel members." *Smith v. Commonwealth*, Ky., 734 S.W.2d 437, 444 (1987), *cert. denied*, 484 U.S. 1036, 108 S.Ct. 762, 98 L.Ed.2d 778 (1988); *Rigsby v. Commonwealth*, Ky., 495 S.W.2d 795, 799 (1973), *overruled on other grounds by, Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 (1985). Accordingly, harmful error was not shown, and we do not reverse on this issue.

■ The remaining issue may arise at a new trial so we address it now. The appellant claims that the trial court erred in refusing to grant a continuance in order to allow the appellant to obtain the testimony of Ms. Scales. The appellant's reliance on *Roviaro v. U.S.*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), is misplaced. *Roviaro*

concerned a defendant's right to have disclosed by the government the identity of the confidential informant. Here, appellant was well aware of Ms. Scales' identity, but he wanted to require the Commonwealth to produce the witness, or for the trial court to grant a continuance to allow the appellant more time to investigate and locate Ms. Scales. We are not aware of the constitutional right the appellant claims to have to interview a witness. Certainly, the Commonwealth is not required to investigate the case for the appellant; and it is not an abuse of discretion for the trial court to deny a continuance of a trial for the appearance of a witness when there is no indication that the witness will ever appear. If this were allowed, it would result in some defendants never being tried. On remand if this issue arises again, the trial court will have to exercise its discretion in light of RCr 9.04 and applicable case law, *McFarland v. Commonwealth*, Ky., 473 S.W.2d 121 (1971); *Turner v. Commonwealth*, Ky., 485 S.W.2d 511 (1972); *Davidson v. Commonwealth*, Ky., 555 S.W.2d 269 (1977); *Wilson v. Commonwealth*, Ky., 601 S.W.2d 280 (1980); *Williams v. Commonwealth*, Ky., 644 S.W.2d 335 (1982); *Fair v. Commonwealth*, Ky., 652 S.W.2d 864 (1983).

For all the foregoing reasons, this matter is reversed and remanded for further proceedings consistent with this Opinion.

All concur.