**David MORROW, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2007–SC–000505–DG.

Supreme Court of Kentucky.

June 25, 2009.

Court convicting him of complicity to commit first-degree trafficking in a controlled substance whereby Appellant was sentenced to six (6) years imprisonment. Appellant claims that the trial court improperly refused to instruct the jury on entrapment. Having been sufficiently persuaded that *Mathews* should be followed in Kentucky, we thus reverse the ruling of the Court of Appeals and remand the matter back to the trial court for further proceedings consistent with this Opinion.

## I. BACKGROUND

Appellant was a former special deputy sheriff in McCreary County and was employed as a part-time deputy jailer at the Whitley County jail during the time he was arrested for complicity to commit first-degree trafficking in a controlled substance with his brother, Ernie Morrow. Appellant claims that it was the events leading up to his arrest which predicate his innocence.

Appellant claimed to know Henry Tapley only peripherally, through an introduction at a local garage of a mechanic they both used. Tapley became associated with Kentucky State Police around February 2002 when officers raided his residence upon suspicion of involvement in the drug trade and discovered Oxycontin and other prescription medications present therein. Tapley was known by the police to be well-connected with other individuals in the drug community. Shortly thereafter, to avoid prosecution, Tapley agreed to cooperate with police and became a confidential informant. Subsequently, a surveillance camera was installed at Tapley's residence in his garage to capture staged drug transactions.

During the course of their involvement with Tapley, police received information that Appellant was connected with selling

Paul J. Neel, Jr., Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Michael Louis Harned, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

The present appeal comes to this Court by way of discretionary review from a decision of the Court of Appeals, wherein it was determined that a criminal defendant may not deny commission of a criminal offense and alternatively seek the affirmative defense of entrapment, breaking with the United States Supreme Court's ruling in *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988).

Appellant, David Morrow, appeals from the Court of Appeals' decision affirming the judgment of the McCreary Circuit

drugs. It was suggested by Detective Billy Correll that Tapley pursue Appellant as a possible target.

Appellant claimed that he had no other dealings with Tapley prior to the events which led to his arrest. Testimony introduced at trial indicated that Tapley sought Appellant out at his residence under the auspices of discussing an antique car which Tapley had brought to his home to restore. During the course of the conversation, Tapley, who was limping and using a cane, complained that he was in pain and asked Appellant if he or his brother, Ernie, had anything that could help him with the pain. Ernie was battling cancer and had been prescribed pain medications for four or five years.

Over the course of the next several days, Tapley vigorously pursued Appellant and his brother, calling repeatedly and stopping by Appellant's house on more than one occasion. The end result was the facilitation of a drug transaction between Tapley and Ernie.

Apparently, Ernie was unfamiliar with where Tapley lived, but Appellant knew the location, allegedly having been there once before. Thus, on March 28, 2003, Appellant and Ernie arrived at Tapley's residence.[1] A portion of the transaction which followed was captured by the surveillance equipment in Tapley's garage. Appellant claimed that he was aware that Tapley wanted drugs, but that he was unaware that Ernie had drugs in his possession.

The videotape of the transaction showed Ernie removing money from his wallet and entering the garage while Appellant remained outside. Tapley claimed that he saw Ernie hand money to Appellant prior

to this. Tapley had been supplied with $600 in marked "buy money" by detectives for purposes of acquiring Oxycontin. In the garage, Ernie indicated that he would sell the prescription medication to Tapley at a price of $35 per pill. Appellant was called into the garage to do some calculations on a piece of paper and arrived at a figure of seventeen (17) pills for a price of $595. Appellant then left the room after performing the calculation and prior to the transaction. Video showed Tapley removing the money from his pocket and exchanging it with Ernie as he counted out the pills. As Ernie left, a photograph of his car was captured by a detective who was in hiding at the scene.

Appellant was subsequently arrested some months later in July 2003 for complicity to commit trafficking, and Ernie was indicted for first-degree trafficking. Appellant and his brother were tried together, although Ernie accepted a plea agreement during the latter stages of the trial.

At the onset of the trial, Appellant moved to dismiss on the basis that he was entrapped; the motion, however, was overruled. During trial, Appellant presented evidence relating to the entrapment and the persistent nature with which Tapley pursued the transaction. Appellant also presented a defense which centered on his involvement in an independent undercover drug investigation scheme, his contact with several figures regarding the investigation and his attempts to set up Tapley.

Appellant alleged that he could not get cooperation from the McCreary County police on his investigation because the police were strongly biased against his family. Appellant's wife had been employed as

---

1. It is disputed whether the brothers arrived together in the same automobile or drove separately.

a 911 operator prior to her termination in July 2002. Appellant claimed that when his wife subsequently filed suit for wrongful termination his family was harassed by the sheriff's department and they refused to assist him.

At the close of evidence, Appellant requested the trial court tender an instruction to the jury on entrapment. The Commonwealth argued that he should not be able to receive the instruction because of his alternate defense regarding his independent undercover drug investigation. The trial court denied Appellant's request for the instruction, claiming that it did not appear that Appellant was entrapped. Appellant was ultimately convicted of complicity to commit first-degree trafficking in a controlled substance and was sentenced to six (6) years imprisonment. We granted discretionary review of the matter to examine whether criminal defendants may alternately and inconsistently plead entrapment as a defense.

## II. ANALYSIS

The sole question before this Court is whether the trial court should have instructed the jury on the entrapment defense. Appellant alleges that sufficient evidence was presented at trial to warrant an instruction on entrapment and, as such, he was denied due process when the trial court refused to so instruct the jury. Because this matter turns on the trial court's determination as to whether to tender a jury instruction, we will engage in a *de novo* review. *Hamilton v. CSX Transp., Inc.*, 208 S.W.3d 272, 275 (Ky.App.2006).

■ The law surrounding entrapment is well-defined in Kentucky, having been amply set forth by both statutory and case law. Entrapment is a defense to a crime available to a defendant if " '[the defendant] was induced or encouraged to engage in [the criminal] conduct by a public servant seeking to obtain evidence against him for the purpose of criminal prosecution,' " and the defendant "was not otherwise disposed to engage in such conduct" at the time of the inducement. *Wyatt v. Commonwealth*, 219 S.W.3d 751, 756 (Ky. 2007) (quoting KRS 505.010).[2] Entitlement to the defense requires satisfaction of both prongs of the test, inducement and absence of predisposition. *Mathews*, 485 U.S. at 63, 108 S.Ct. 883.

Here, the first prong, inducement, is conceded by the Commonwealth. It is uncontroverted that Tapley was a confidential informant working in conjunction with the state police under the direction of Detective Correll. The facts indicate that Tapley was engaged in a scheme whereby a video camera was set up in his garage to record drug transactions. Tapley was paid one hundred dollars ($100) for each drug

**2.** KRS 505.010 states in full:
(1) A person is not guilty of an offense arising out of proscribed conduct when:
(a) He was induced or encouraged to engage in that conduct by a public servant or by a person acting in cooperation with a public servant seeking to obtain evidence against him for the purpose of criminal prosecution; and
(b) At the time of the inducement or encouragement, he was not otherwise disposed to engage in such conduct.
(2) The relief afforded by subsection (1) is unavailable when:

(a) The public servant or the person acting in cooperation with a public servant merely affords the defendant an opportunity to commit an offense; or
(b) The offense charged has physical injury or the threat of physical injury as one (1) of its elements and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.
(3) The relief provided a defendant by subsection (1) is a defense.

transaction he facilitated. The Commonwealth admits that it was Tapley who first broached the issue of whether Appellant could supply him with Oxycontin and that all subsequent conversations between the Morrow brothers and Tapley were initiated by Tapley.

There was ample testimony introduced at trial that Tapley was quite persistent in his efforts. Although the exact numbers are contested, it appears that Tapley went to Appellant's home at least twice and made numerous phone calls to Appellant's residence, calling as many as two to three times a day and speaking with Appellant, his mother, his brother, his wife, and his children at various times. Testimony indicated that Tapley's number appeared on Appellant's caller identification record twenty (20) times. Appellant's brother, Ernie, testified that Tapley called him on five (5) consecutive days asking for Oxycontin. Testimony indicated that Ernie told Appellant Tapley was "driving him crazy." The Commonwealth concedes that although Appellant acquiesced to the sale, he was not the "prime mover" in the transaction. *Wyatt*, 219 S.W.3d at 757.

If the first prong of the entrapment defense is satisfied, the burden then shifts to the prosecution to prove beyond a reasonable doubt that the defendant was predisposed to engage in the criminal act prior to inducement by the government or its agent. *Id.; Commonwealth v. Day*, 983 S.W.2d 505 (Ky.1999); KRS 500.070(3). "Predisposition, 'the principal element in the defense of entrapment,' focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews*, 485 U.S. at 63, 108 S.Ct. 883 (*quoting Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)) (internal citations omitted); *Sherman v. United States*, 356 U.S. 369, 376–377, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). This Court has found that predisposition may be demonstrated by "evidence that ... the accused has engaged in a course of similar crimes, where the defendant was merely afforded an opportunity to commit a preconceived plan, or where willingness to commit the crime is apparent by ready compliance." *Wyatt*, 219 S.W.3d at 757.

Here, evidence presented at trial produced conflicting accounts as to whether Appellant had previously engaged in a course of similar criminal behavior or was in fact willing to commit the crime in this instance. Appellant had formerly been employed by the county sheriff's department and was employed as a part-time deputy jailer at the time of his arrest. Testimony indicated that Appellant had never been in any trouble prior to his arrest. When Tapley first approached Appellant about acquiring Oxycontin, Appellant indicated that he did not sell drugs and was not involved in drugs. During subsequent contacts by Tapley, Appellant repeated to him that he did not sell drugs. When Tapley became an informant for the sheriff's department, he submitted a list of names of people who he knew had involvement in the drug trade in the community. Appellant's name was not on this list.

Alternatively, Detective Correll testified at trial that he received information from other sources linking Appellant with the drug trade. Correll testified that Tapley indicated he had purchased drugs from Appellant once before, prior to 2002. Likewise, Tapley testified that Appellant once came to his house looking for an individual who allegedly owed him money from a soured drug deal. Moreover, Appellant's brother, Ernie, initially implicated Appellant in drug trafficking, though Ernie later refuted this testimony at trial, claiming that he was suffering from mild

dementia during the time the statement was made as a result of treatments he was undergoing for cancer.

However, the "x-factor" in this analysis centers on Appellant's defense at trial, a rather intricate account whereby he claims that he was engaged in an independent drug investigation under the auspices of garnering future employment. Appellant had worked on the election campaign of Sheriff Clarence Perry. According to Appellant, he expected to be hired as a deputy sheriff after Perry's election and had begun gathering evidence on Tapley during this time. Appellant indicated he had driven an individual to Tapley's residence on two occasions to observe drug transactions in an effort to gather evidence against him. Appellant claimed that he wanted Tapley to believe that he was involved in the drug culture so that he could make a false buy from him in the future. Testimony indicated that Appellant had informed former fellow deputy jailer Bob Robinson that he intended to contact undercover police detective David Lassiter for purposes of setting up Tapley. Appellant also claimed that he had been in contact with Constable Milford Creekmore, who had informed him that he would bring charges on any individual on whom Appellant could produce evidence. However, at trial, Sheriff Perry testified that he did not recall speaking with Appellant about the investigation and that he had initially considered hiring Appellant but declined to do so, on the basis of rumors that he was on medication.

Thus, the crux of the present matter is this: did Appellant's assertion that he was engaged in the transaction for purposes of an independent criminal investigation preclude him from alternatively asserting that he was entrapped? We think not.

The United States Supreme Court specifically addressed the issue of alternative inconsistent defenses in the entrapment setting, i.e. denial of the offense and reliance upon entrapment, in a case substantially on point. *See Mathews*, 485 U.S. at 64, 108 S.Ct. 883. In *Mathews*, the United States government argued that a criminal defendant should not be allowed to both deny an offense and alternatively rely on an entrapment defense "[b]ecause entrapment presupposes commission of a crime." *Id.* at 63, 108 S.Ct. 883 (*citing United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)). Rejecting that argument, the Supreme Court recognized "[a]s a general proposition a defendant is entitled to an instruction as to *any* recognized defense *for which there exists evidence* sufficient for a reasonable jury to find in his favor." *Id.* (emphasis added). Extrapolating that logic, the Court noted that both federal and state courts permit alternative inconsistent affirmative defenses in various settings and that inconsistent pleading is explicitly allowed under the federal rules of civil procedure and impliedly allowed under the federal criminal rules. Accordingly, the Court held that, in the case of entrapment, a defendant could deny the acts and elements constituting the underlying crime, yet still maintain an entrapment defense. *Id.* at 65, 108 S.Ct. 883 (*citing United States v. Demma*, 523 F.2d 981, 985 (9th Cir.1975)).

The Court of Appeals, in its opinion below, found that Appellant, was not entitled to the entrapment defense—rejecting the Supreme Court's reasoning in *Mathews*,[3] and adopting instead, a position con-

---

**3.** The Court of Appeals is correct insofar as it asserts that *Mathews* concerns a federal prosecution and does not posit constitutional mat-

sistent with the view espoused by Justice White's dissent, in which he reasoned, " '[p]ermitting a defendant to argue two defenses that cannot both be true is equivalent to sanctioning perjury by the defendant.' " *Mathews*, 485 U.S. at 72, 108 S.Ct. 883 (White, J., dissenting) (*quoting* Note, *Entrapment and Denial of the Crime: A Defense of the Inconsistency Rule*, 1986 Duke L.J. 866, 883–884.).

■ As Justice White aptly noted, "a criminal trial is not a game or a sport." *Mathews*, 485 U.S. at 72, 108 S.Ct. 883 (White, J. dissenting). Indeed, it is not. However, neither should the investigatory techniques of public officers and their agents be considered a game of cat and mouse, where otherwise innocent persons are intentionally provoked into criminal acts. Although,

> [a]rtifice and stratagem may be employed to catch those engaged in criminal enterprises. The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic ... and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.

*Sorrells*, 287 U.S. 435 at 442, 53 S.Ct. 210, 77 L.Ed. 413 (internal citations omitted). The entrapment defense allows a jury to sift out the truly innocent from the process of prosecution and is therefore important to our freedoms.

The Court of Appeals opined that when presented with inconsistent alternative defenses, "[a] jury could not logically con-

clude that a defendant failed to commit the crime and yet had been entrapped." *Morrow v. Commonwealth*, No.2005–CA–001645–MR, slip op. at 5, 2007 WL 1892776 (Ky. June 29, 2007). While as a tactical reality this may be correct, this supposition, however, ignores the fact that the law, in many arenas, indulges in the legal fiction of inconsistent pleadings and defenses. *See, e.g., Demma*, 523 F.2d at 985 ("The rule in favor of inconsistent defenses reflects the belief of modern criminal jurisprudence that a criminal defendant should be accorded every reasonable protection in defending himself against governmental prosecution."); *see also Love v. State*, 441 So.2d 1353, 1356 (Miss.1983) ("Litigants in all cases are entitled to assert alternative theories, even inconsistent alternative theories."). The obvious danger implicated in not allowing a criminal defendant to alternatively claim innocence and entrapment as a defense is that it forces the defendant to admit to the criminal acts in question in order to have the defense available.

Thus, we do not share in the Court of Appeals' and Justice White's fear of the entrapment defense, and do not think claiming alternative inconsistent defenses "will encourage perjury, lead to jury confusion, [or] subvert the truth-finding function of the trial. These same concerns are [ ] present in the civil context, yet inconsistency is expressly allowed under the Federal Rules of Civil Procedure. We do not think that allowing inconsistency necessarily sanctions perjury." *Mathews*, 485 U.S. at 65, 108 S.Ct. 883. *Mathews* unequivocally held that "when the defendant denied one or more elements of the offense, the defendant is still entitled to an entrapment instruction whenever sufficient evidence exists from which a reasonable jury could find entrapment." *United States v. Walther*, 867 F.2d 1334, 1339 (11th Cir.1989)

ters. Thus, Kentucky is not obligated to follow it.

(considering the retroactive applicability of *Mathews* for purposes of permitting alternate defenses). We think this is a sound position under the law and, accordingly, find the Court of Appeals holding untenable.[4]

Thus, we hold that a criminal defendant may properly deny one or more elements of a criminal offense and alternatively claim the affirmative defense of entrapment *if* sufficient evidence is introduced at trial to warrant instructing the jury as to the defense. Here, the Commonwealth conceded that Appellant was induced to participate in the transaction. Therefore, the burden was on the prosecution to prove beyond a reasonable doubt that Appellant was predisposed to participate. *Wyatt,* 219 S.W.3d at 757. Although the trial testimony was conflicting, we believe that there was sufficient evidence introduced such that a reasonable juror *could have* believed that Appellant was entrapped.

Accordingly, because "[t]he question of entrapment is generally one for the jury, rather than for the court," *Mathews,* 485 U.S. at 63, 108 S.Ct. 883, and because Kentucky courts are bound to instruct juries on the whole law of the case, *Ward v. Commonwealth,* 695 S.W.2d 404, 406 (Ky. 1985), including alternative instructions when supported by the evidence, *Hayes v. Commonwealth,* 625 S.W.2d 583, 584 (Ky. 1981), the trial court erred in failing to instruct the jury on entrapment.

### III. CONCLUSION

For the aforesaid reasons, we hereby reverse the ruling of the Court of Appeals and remand the matter to the McCreary Circuit Court for further proceedings consistent with this opinion.

All sitting. All concur.

---

4. The aforementioned analysis notwithstanding, the Court of Appeals based its holding, in part, on its determination that Appellant was denying the underlying offense and thus could not claim entrapment as it necessitates, as a prerequisite, that the offense was committed. However, we believe that the Court of Appeals misconstrued Appellant's defense. Here, Appellant was not asserting that he did not engage in the transaction, rather that he was not complicit in trafficking, as he was not criminally culpable because he was gathering evidence against Tapley, or, alternatively, that he was entrapped.