**UNITED STATES of America**

v.

**Rufus HOLLAND, Appellant.**

**No. 86–3027.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 30, 1986.

Decided Feb. 6, 1987.

Timothy Beer (student counsel), with whom Nancy Louis Cook, Washington, D.C., (appointed by this Court) was on brief, for appellant.

Mary Incontro, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., and Robert E. McDaniel, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MIKVA and BUCKLEY, Circuit Judges, and PARSONS,* Senior District Judge.

Opinion for the Court filed by Senior District Judge PARSONS.

PARSONS, Senior District Judge:

Rufus Holland was indicted and convicted under 21 U.S.C. sec. 845a of six counts of selling a controlled substance within 1,000 feet of a school. On appeal he challenges the constitutionality of that statute. We hold that the statute as applied to Holland is constitutional and affirm his conviction and sentence.

The facts that led to Holland's conviction are not disputed on appeal. On six separate occasions between March and June of 1985, he sold the narcotic dilaudid to an undercover police officer. Dilaudid is a Schedule II morphine-based drug, see 15 C.F.R. 370.10(d) (1986), that is prescribed for the treatment of moderate to severe pain. Each sale was subject to punishment under section 845a upon conviction because it took place within 1,000 feet of the Garnet-Patterson Junior High School. Before trial, Holland moved to dismiss the indictment on the ground that section 845a(a) is unconstitutional, and on October 18, 1985, this was denied. At the conclusion of a two-day jury trial in January, 1986, Holland was convicted. On March 7, 1986, he was sentenced to serve concurrently six 10–year prison terms, to be followed by a 6–year special parole term.

Holland raises three constitutional issues. He claims that section 845a violates constitutional principles of equal protection of the laws. He also claims that the statute violates due process by creating a presumption "for which there is no rational connection between the fact proved and the ultimate fact presumed." Finally, he claims a violation of due process because the statute imposes enhanced punishment upon those convicted of distributing controlled substances within the 1000–foot zone without regard to whether the accused knowingly was within that zone.

The challenged statute provides:

Sec. 845a. Distribution in or near schools

(a) Penalty

Any person who violates section 841(a)(1) of this title by distributing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school is (except as provided in subsection (b) of this section) punishable (1) by a term of imprisonment, or fine, or both up to twice that authorized by section 841(b) of this title; and (2) at least twice any special parole term authorized by section 841(b) of this title for a first offense, involving the same controlled substance and schedule.

21 U.S.C. sec. 845a(a). The sections of 21 U.S.C. incorporated by section 845a(a), 21

---

* Of the United States District Court for the Northern District of Illinois, sitting by designation pursuant to 28 U.S.C. § 292(d).

U.S.C. sec. 841(a) & (b), provide in relevant part:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

(b) ... any person who violates subsection (a) of this section shall be sentenced ... to a term of imprisonment of not more than 15 years ... [and to] a special parole term of at least three years in addition to such term of imprisonment.

Thus, section 845a adds an element to the offense of section 841(a), and if that element is proved, a violator is subject to a doubling of the punishment allowable under section 841(b).

A threshold inquiry is whether it is necessary to reach the constitutional issues Holland raises. That inquiry concerns whether the sentencing judge considered section 845a in setting Holland's sentence. If not, then we would need to consider whether we could affirm Holland's sentence under section 841(b)(1)(B) without addressing the constitutional questions. See generally *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 764 F.2d 858, 861–62 (D.C.Cir. 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 792, 88 L.Ed.2d 770 (1986).

Holland's confinement sentence of 10 years for each count is within the limits of 21 U.S.C. sec. 841(b)(1)(B). In addition, Holland's special parole term of six years could also have been imposed under section 841(b)(1)(B). We note, without expressing any opinion about it here, that this provision has been consistently interpreted in other circuits as allowing a maximum lifetime special parole term. See, e.g., *United States v. Bridges*, 760 F.2d 151, 153 (7th Cir.1985). However, a review of the sentence proceeding transcript indicates that the trial judge relied on the enhancement provisions of 845a in setting Holland's special parole term at six years. If 845a is unconstitutional, because the trial judge's

application of it led to a longer special parole term sentence than he otherwise might have given, Holland could be entitled to resentencing under section 841(b)(1)(B). See generally *United States v. Bruner*, 657 F.2d 1278, 1299 (D.C.Cir.1981). Therefore, we must address the constitutional questions Holland raises.

## EQUAL PROTECTION

Holland claims that section 845a violates equal protection principles because the classification it creates is both so overinclusive and so underinclusive that it fails to effectuate rationally the intent of the statute. It is over-inclusive, he argues, because it can apply to drug transactions between adults that take place within private dwellings proximate to schools and to those that occur during times when schools are not in session. And it is underinclusive because it does not apply to drug transactions that occur on or near other areas, such as nonschool playgrounds and recreation centers, which pose equal or greater dangers to the children who frequent them at all times of the year and at potentially any hour of the day or night.

### Standard of review

Holland has effectively conceded, as he must, that section 845a is not subject to heightened scrutiny in the equal protection analysis. See *United States v. Batchelder*, 442 U.S. 114, 123–25 & 125 n. 9, 99 S.Ct. 2198, 2203–05, & 2205 n. 9, 60 L.Ed.2d 755 (1979) (implicitly applying "rational basis" test to an equal protection challenge of a statute allowing two different prison sentences for the same offense); *United States v. Cohen*, 733 F.2d 128, 132–36 (D.C. Cir.1984) (applying "rational basis" test in analyzing equal protection problem concerning the civil commitment of criminal defendants acquitted by reason of insanity). The focus in the equal protection challenge here is not upon the deprivation of liberty by confinement in prison, but upon the activities leading to that confinement. *Cohen*, 733 F.2d at 133. The statute does not proscribe activities that are legally protected, much less "fundamental," *id.*, nor

has it been shown to involve any legally cognizable "suspect" class. *Id.* at 134–35. Thus, the classification must be upheld if "any state of facts rationally justifying it is demonstrated to or perceived by the court[ ]." *United States v. Maryland Savings-Share Insurance Corp.*, 400 U.S. 4, 6, 91 S.Ct. 16, 27 L.Ed.2d 4 (1970); see *Jones v. Helms*, 452 U.S. 412, 425–26, 101 S.Ct. 2434, 2443–44, 69 L.Ed.2d 118 (1981). If section 845a rationally effectuates Congress' purpose for its enactment, it will survive an equal protection challenge.

*Legislative purpose of section 845a*

Though this case presents the first challenge of section 845a in this Circuit, it already has been considered and upheld in several cases in the Second Circuit. Those cases examined at some length Congress' purpose in passing the statute. In *United States v. Falu*, 776 F.2d 46, 48–50 (2nd Cir.1985), the court reviewed the legislative history of the statute, and particularly the statements of Senator Paula Hawkins, who sponsored the bill. The court in *Falu* concluded that section 845a was intended to " 'send a signal to drug dealers that we will not tolerate their presence near our schools,' 130 Cong.Rec. S559 (daily ed. January 31, 1984) (statement of Sen. Hawkins). . . ." *Id.* at 48. The Court also stated that

> Congress sought to create a drug-free zone around schools; whether it chose to do so directly or indirectly is not particularly relevant ... the provision was designed to "deter drug distribution in and around schools," including transactions which "take place in remote outdoor areas, at local hangouts, or at nearby homes or apartments," thereby helping to "eliminate outside negative influences" around schools.

*Id.* at 50 (quoting 130 Cong.Rec. S559, *supra* ). In *United States v. Jones,* the court concluded that the statute was introduced to help reduce drug use by children by "threatening pushers who approach our children near schools with stiff penalties." 779 F.2d 121, 123 (2nd Cir.1985) (quoting 130 Cong.Rec. S559, *supra* ), *cert. denied,*

— U.S. ——, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986). In *United States v. Agilar,* the court stated that "Congress wanted to lessen the risk that drugs would be readily available to school children. It is surely rational to achieve that goal by increasing penalties for those who sell drugs near schools." 779 F.2d 123, 125 (2nd Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986). See also *United States v. Dixon,* 619 F.Supp. 1399, 1400 (S.D.N.Y.1985); *United States v. Cunningham,* 615 F.Supp. 519, 520 (S.D.N.Y.1985); *United States v. Nieves,* 608 F.Supp. 1147, 1149–50 (S.D.N.Y.1985).

 We concur in these recitations of the congressional purpose in enacting the 1000–foot zone of protection, and hold that the statute is rationally structured to effectuate that purpose. Holland's argument that the statute is unconstitutionally over-inclusive because it applies to transactions that take place in nearby private dwellings misses the point. See *Cunningham,* 615 F.Supp. at 520–21. The consequences of such transactions inevitably flow from inside the dwellings onto the streets and contribute directly to the violent and dangerous criminal milieu Congress sought to eliminate in the proximity of schools. Enhanced punishment of these transactions is rationally related to the purposes of 845a. Neither are we persuaded by the argument that the statute is impermissibly underinclusive because it does not apply to drug transactions that take place near non-school playgrounds and recreation centers. Even if, as Holland suggests, drug transactions in or near these areas pose a greater threat to children, equal protection of the laws does not require Congress in every instance to order evils hierarchically according to their magnitude and to legislate against the greater before the lesser. See *New Orleans v. Duke,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). The "prohibition of the Equal Protection Clause goes no further than the invidious discrimination." *Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). See *U.S. v. Agilar,* 779 F.2d 123, 126 (2nd Cir.1985) (section 845a

does not raise equal protection problem because there is no showing of discriminatory intent). The classification established by section 845a does not give rise to invidious discrimination.

### DUE PROCESS—IRRATIONAL PRESUMPTION

Holland argues that section 845a establishes an irrebuttable and irrational presumption. He frames the issue: "from the proven fact (distance from a school), it is presumed that the perpetrator is deserving of substantially greater punishment than would ordinarily be tolerated." He concludes that "[i]t cannot be said with any assurance that it is more likely than not that an individual who engages in drug transactions near a school is significantly more culpable than one who moves a few yards down the street."

This argument fundamentally misperceives the cases it relies on, which are *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). In *Tot*, the presumption issue concerned a statute that stated:

> It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act.

319 U.S. at 464, 63 S.Ct. at 1243 (quoting 15 U.S.C. sec. 902(f) (repealed 1968)). The Court in *Tot* announced and applied the rule that

> a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not

be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts.

*Id.* at 467–68, 63 S.Ct. at 1244–45 (footnotes omitted). The Court then held that this statutory presumption was a violation of due process. *Id.* at 469, 63 S.Ct. at 1246.

In *Leary*, the presumption issue concerned a statute that imposed criminal penalties upon every person who

> knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law ..., or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law....

395 U.S. at 30, 89 S.Ct. at 1545 (quoting 21 U.S.C. sec. 176a (repealed 1970)). A subsequent paragraph set forth the challenged presumption. It stated:

> Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury.

*Id.* The Court in *Leary*, applying the rule announced in *Tot* to the presumption of unlawful importation, held that the presumption violated due process. *Id.* at 52, 89 S.Ct. at 1556–57.

There is a fundamental distinction between the presumption issues in these cases, and the one Holland raises in the instant case. The presumptions in the cases on which Holland relies allowed the trier of fact to predicate *guilt* on a set of facts presumed from another set of facts proved. In reviewing these presumptions, courts essentially have focused on whether

there is substantial assurance that the presumed fact coexists with the proved fact. If not, then guilt cannot consistent with due process be predicated upon the presumed facts. See *id.* at 36, 89 S.Ct. at 1548.

Section 845a does not require a similar presumption in the proof of guilt. It does not require for a conviction a defendant's presumed or proved knowledge that he or she was within the 1000–foot zone. Guilt simply is not predicated upon a presumed set of facts. Rather, section 845a creates a separate yet related offense and provides the allowable punishment for its commission. The only fact remaining to be proved beyond those required for a conviction under section 841 is that the illegal transaction took place within 1000 feet of a school. The presumed fact to which Holland refers, "that the perpetrator is deserving of substantially greater punishment than would ordinarily be tolerated," is one already decided by Congress as a matter of law. The standards announced in *Tot* and *Leary* for reviewing legislatively established presumptions were not intended to apply to a review of the congressional determinations of appropriate punishment.

Looking at Holland's argument another way, the phrase "greater punishment than would ordinarily be tolerated" implies a referent. If Holland is assuming that the referent is section 841(b)(1)(B), and that the punishment allowed by 845a is greater than that which would "ordinarily be tolerated" by section 841(b)(1)(B), then his argument is simply a restatement of his equal protection argument, and no different result is compelled. The only other possible referent of his phrase "greater punishment than would ordinarily be tolerated" is that the possible sentence under section 845a goes beyond the bounds of legitimate punishment and is "cruel and unusual" under the Eighth Amendment. To do so, it must either involve the "unnecessary and wanton infliction of pain," *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (plurality) (quoting *Furman v. Georgia,* 408 U.S. 238, 392–93, 92

S.Ct. 2726, 2805–06, 33 L.Ed.2d 346 (1972) (Burger, C.J., dissenting)), or provide for punishment that is grossly out of proportion to the severity of the crime. *Id.* See also *Solem v. Helm,* 463 U.S. 277, 303, 103 S.Ct. 3001, 3016, 77 L.Ed.2d 637 (1983). Punishment established by a democratically elected legislature is presumed valid, and a "heavy burden rests on those who would attack the judgment of the representatives of the people." *Gregg,* 428 U.S. at 175, 96 S.Ct. at 2926. Holland understandably does not even attempt to carry this massive burden.

Our view of this presumption issue finds recent support in *McMillan v. Pennsylvania,* ⸺ U.S. ⸺, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In *McMillan,* the Court upheld the constitutionality of Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa.Cons.Stat. sec. 9712 (1982). Section 9712 of that act provides for a mandatory minimum sentence of five years' imprisonment of anyone convicted of certain felonies if the sentencing judge finds, by a preponderance of the evidence, that the person visibly possessed a firearm during the commission of the offense. 42 Pa. Cons.Stat. sec. 9712(a). Visible possession of a firearm is not to be deemed an element of the offense, but is instead a sentencing factor to be established by only a preponderance of the evidence in a sentencing proceeding. *Id.,* sec. 9712(b).

In upholding the Act, the Court noted that it "creates no presumptions of the sort condemned in ... *Tot v. United States,* 319 U.S. 463 [63 S.Ct. 1241, 87 L.Ed. 1519] (1943) ... [n]or does it relieve the prosecution of its burden of proving guilt; sec. 9712 only becomes applicable after a defendant has been duly convicted of the crime for which he is to be punished." 106 S.Ct. at 2417 (citations omitted). There is, of course, one important distinction between *McMillan* and the present case. Under the statute challenged in *McMillan,* the sentencing judge must determine by a preponderance of the evidence whether there was visible possession of a firearm during the commission of the felony. Under sec-

tion 845a, the sentence enhancing element is already incorporated into the underlying offense. This distinction aside, here as in *McMillan,* a legislative determination that certain consequences should follow a particular act, does not involve the kind of factual presumption imposed upon the trier of fact in *Tot* or in *Leary.*

Nor does it rate comparison with the kind of irrebuttable presumptions that were condemned in two cases that were cited in *Agilar,* 779 F.2d at 125, when that court analyzed an identical challenge to section 845a. Those cases are *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 648, 94 S.Ct. 791, 800, 39 L.Ed.2d 52 (1974) (Maternity leave rules of two school systems which required all pregnant teachers to take unpaid maternity leave by a certain time during the second trimester violated due process because they were premised on the irrational presumption that all teachers become incapacitated at the same time during pregnancy, and thus the rules bore no rational relation to the states' interests in preserving continuity of instruction.); and *United States Department of Agriculture v. Murry,* 413 U.S. 508, 511–14, 93 S.Ct. 2832, 2834–36, 37 L.Ed.2d 767 (1973) (A statute that declared an entire household ineligible for food stamps if one member had been claimed as a tax dependent in the previous year by a nonmember of the household violated due process because its conclusive presumption was irrational in that it bore no reasonable relationship to the actual needs of the household.)

■ We find that the instant statute does not contain a "fact upon fact" type of presumption such as those involved in *Tot* and *Leary,* and does not involve conclusive determinations that may be contrary to verifiable fact as were the rules involved in *LaFleur* and *Murry.* Instead, the presumption Holland challenges is the congressional determination that those who sell drugs within 1000 feet of a school commit a more serious offense and deserve proportionally greater punishment than those who sell drugs outside this 1000-foot zone. It is a matter of universal awareness that when government provides educational facilities for children away from their homes it assumes a parental responsibility to furnish them an educational environment as free from crime as reasonably it can make it. Its protection of them is most needed within the school and its proximate surroundings. And it is a matter of general understanding that in our average cities and villages controlled zones around public structures usually extend 1000 feet. Absent an equal protection problem, the punishment allowed by section 845a is to be reviewed under and is well within the broad, though not unlimited, discretion of Congress under the Eighth Amendment to fix the degree of punishment in proportion to this particular crime. *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009–10.

### DUE PROCESS—LACK OF A KNOWLEDGE REQUIREMENT

Finally, Holland argues that section 845a violates due process because it provides extra punishment for acts without regard for whether or not the actor "knew or had a reasonable probability of knowing that such acts affected culpability." He claims that the statute is infirm because it "is silent as to whether the distributor must have knowledge of the proximity of the school, intend to engage in narcotics traffic near school children, or know that such conduct is forbidden." Holland's argument raises two issues of actual knowledge: knowledge of the statute itself, and knowledge of proximity to schools.

■ Generally, as Holland concedes, ignorance of the law does not serve as an excuse for criminal conduct. The narrow exception to this rule is found where legislation criminalizes "wholly passive" conduct by a person who is "unaware of any wrongdoing." *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957). *Lambert* itself emphasizes the narrowness of this exception: "There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its defini-

tion. ... The rule that 'ignorance of the law will not excuse' ... is deep in our law...." *Id.* (citations omitted). Due process does not require the prosecution to prove that a drug trafficker had actual knowledge of section 845a.

The claim that section 845a is infirm because it fails to require the prosecution to prove that a drug trafficker has actual knowledge of proximity to a school in order to support a conviction thereunder was addressed and rejected in *United States v. Ofarril*, 779 F.2d 791, 792 (2nd Cir.1985) (per curiam), *cert. denied,* —— U.S. ——, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986), and in *Falu*, 776 F.2d at 50. The court in *Falu* observed that it "is true that 'criminal offenses requiring no *mens rea* ' " are disfavored, but that "Congress can dispense with this requirement." *Id.* (quoting *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985)).

Holland suggests that *Falu* was wrongly decided because it is inconsistent with the rationale of *Liparota.* But *Liparota* was concerned with a food stamp statute which provided "that 'whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations' is subject to a fine and imprisonment." 471 U.S. at 420, 105 S.Ct. at 2085 (quoting 7 U.S.C. sec. 2024(b)(1)). The Supreme Court held that in order to violate this statute, the government must prove that the accused knew that his or her use, transfer, acquisition, alteration or possession was unauthorized. 471 U.S. at 433–34, 105 S.Ct. at 2092–93. The Court emphasized in reaching this result that this construction

> is particularly appropriate where ... to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct ... [and that] requiring *mens rea* [here] is in keeping with our longstanding recognition that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity" ... Although the rule of lenity is not to be applied where to do so would conflict with the implied or expressed

intent of Congress, it provides a time-honored interpretive guideline when the congressional purpose is unclear.

*Id.* at 426–27, 105 S.Ct. at 2088–89 (citations omitted).

The rationale of *Liparota* does not apply to the present case. Section 845a does not criminalize a broad range of apparently innocent conduct. Nor would it be appropriate to apply the rule of lenity here, where the application of it would "undercut [the] unambiguous legislative design" of this section. *Falu*, 776 F.2d at 50.

■ In *Liparota* the Court also discussed generally the "public welfare" type of offense such as those similar to the offense here, and as it earlier had been defined in *Morissette v. United States*, 342 U.S. 246, 252–53, 72 S.Ct. 240, 244–45, 96 L.Ed. 288 (1952). 471 U.S. at 432–33, 105 S.Ct. at 2092. The Court in referring to this type of case stated that "[i]n most previous instances, Congress has rendered criminal a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety." *Id.* at 433, 105 S.Ct. at 2092 (citing *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922)); see also *United States v. Feola*, 420 U.S. 671, 684, 95 S.Ct. 1255, 1263–64, 43 L.Ed.2d 541 (1975). It is easily concluded here that Congress' heightened interest in protecting children from both the indirect and the direct perils of drug traffic amply supports its decision not to require a showing of *mens rea* of the proximity of a school. A reasonable person would know that drug trafficking is subject to stringent public regulation because it can seriously threaten the community's health and safety, particularly as it relates to the community's heightened concern for the health,

safety and welfare of its children. And because knowledge of section 845a is presumed in law, it is reasonable for Congress to have expected drug traffickers to ascertain their proximity to schools and remove their operations from these areas or assume the risk for their failure to do so. See *Falu*, 776 F.2d at 50.

This Court finds no merit in any of Holland's arguments that section 845a is unconstitutional either on its face or as it was applied to him. Accordingly, the conviction and sentence from which he appeals are affirmed.