RENDERED: JUNE 17, 2010
TO BE PUBLISHED

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$ **FINAL**

2008-SC-000899-DG

DATE _07082010_

ORLANDO SAXTON                                                    APPELLANT


                    ON REVIEW FROM COURT OF APPEALS
V.                        CASE NO. 2007-CA-002335-MR
               GRAVES CIRCUIT COURT NO. 06-CR-00195


COMMONWEALTH OF KENTUCKY                                          APPELLEE


             **OPINION OF THE COURT BY JUSTICE ABRAMSON**

                              **<u>AFFIRMING</u>**


     Pursuant to Kentucky Revised Statute (KRS) 218A.1411, any one who

unlawfully traffics in a controlled substance within one thousand (1,000) yards

of a school is guilty of a Class D felony unless the provisions of KRS Chapter

218A otherwise provide a more severe penalty for the offense. Following his

conviction for selling marijuana within 1,000 yards of Graves County High

School, Appellant Orlando Saxton challenges that conviction on the ground

that the Commonwealth was required to prove that he knew he was trafficking

within the prohibited proximity to a school. He also alleges that his conviction

was tainted by palpable error because police entrapped him by arranging for

the drug transaction to occur at a specific location near the school. Finding no

error on either ground, we affirm his conviction.

# RELEVANT FACTS

Saxton was indicted by the Graves County Grand Jury on three counts of first-degree trafficking in a controlled substance and one count of trafficking in a controlled substance within 1,000 yards of a school. He was convicted on all four counts following a jury trial and sentenced to five years on each of the first-degree trafficking charges and one year on the charge of trafficking within 1,000 yards of a school, with all sentences to run consecutively for a total of sixteen years. The first-degree trafficking charges arose from sales of cocaine on January 25, 2006 and are not pertinent to this appeal.

The violation of KRS 218A.1411, a statute entitled "Trafficking in controlled substance in or near school-Penalty", involved a January 7, 2006 sale of marijuana to Saxton's aunt, Anna Saxton, and her fiancé, Henry Island. After agreeing to work as informants for the Pennyrile Narcotics Task Force, Ms. Saxton and Island arranged for Orlando Saxton to meet them at a Days Inn Motel, a location within 1,000 yards of Graves County High School. In a videotaped transaction, Saxton sold the informants 8.3 grams of marijuana. Saxton was convicted as noted and appealed to the Court of Appeals.

The Court of Appeals rejected Saxton's argument that Kentucky law imparted a *mens rea* requirement to KRS 218A.1411, *i.e.*, that the Commonwealth was required to prove that he "knowingly" trafficked within 1,000 yards of a school. That Court also rejected Saxton's arguments that his conviction was tainted by police entrapment constituting palpable error and that he was impermissibly denied the opportunity to impeach Henry Island.

2

This Court granted discretionary review as to the alleged *mens rea* requirement in KRS 218A.1411 and the entrapment issue.

## ANALYSIS

### I. KRS 218A.1411 Does Not Require Proof That a Defendant Knew He Was Trafficking Illegal Drugs Within 1,000 Yards of a School.

Kentucky has codified criminal offenses involving trafficking and possession of controlled substances in KRS Chapter 218A entitled simply "Controlled Substances." Trafficking in the first-degree, second-degree and third-degree all require that a person "knowingly and unlawfully" traffic in the particular controlled substances covered by that specific offense. *See* KRS 218A.1412, .1413, and .1414. Similarly, KRS 218A.1421 prohibits "knowingly and unlawfully" trafficking in marijuana and provides penalties ranging from a Class A misdemeanor to a Class B felony contingent upon the quantity of marijuana and whether it is a first or subsequent offense. But for KRS 218A.1411 regarding trafficking in proximity to a school, Saxton would have been charged with a Class A misdemeanor due to the fact he sold less than 8 ounces of marijuana and it was his first offense. He challenges his Class D felony conviction pursuant to KRS 218A.1411, maintaining that various provisions in KRS Chapter 501 of the Kentucky Penal Code and, by analogy, United States Supreme Court case law, require the Commonwealth to prove he knew he was conducting the drug transaction within 1,000 yards of a school. We begin not with Saxton's extra-statutory language arguments but with the plain language of the statute.

KRS 218A.1411 provides:

3

Any person who unlawfully traffics in a controlled
substance classified in Schedules I, II, III, IV or V, or a
controlled substance analogue in any building used
primarily for classroom instruction in a school or on
any premises located within one thousand (1,000)
yards of any school building used primarily for
classroom instruction shall be guilty of a Class D
felony, unless a more severe penalty is set forth in this
chapter, in which case the higher penalty shall apply.
The measurement shall be taken in a straight line
from the nearest wall of the school to the place of
violation.

Clearly, the statute contains no requirement that the person who is unlawfully

trafficking "know" that he is doing so within 1,000 yards of a school. In this

regard, our statute is like its federal counterpart, formerly codified at 21 U.S.C.

§ 845a and entitled "Distribution in or near schools",[1] which similarly provides

more severe penalties for "distributing a controlled substance" near a school

but contains no reference to a *mens rea* on the part of the defendant as to the

proximity of the school. Before turning to instructive federal precedent

addressing that particular statute, it is also noteworthy that KRS 218A.1411

simply refers to one who "unlawfully" traffics. As noted above, all of the other

trafficking statutes in KRS Chapter 218A employ two adverbs to modify

"traffics", *i.e.*, "knowingly and unlawfully." KRS 218A.1411 departs from that

form in what appears to be a very deliberate choice of language.

As for the federal statute prohibiting distribution of drugs in or near

schools, several United States Courts of Appeal have upheld the federal statute

against challenges that it violates due process because it provides extra

---

[1] This provision has been expanded, retitled "Distribution or manufacturing in or
near schools and colleges" and is now codified at 21 U.S.C. § 860.

4

punishment without regard for whether the actor knew of either the existence of the statute or his proximity to a school. In *United States v. Holland*, 810 F.2d 1215, 1222-23 (D.C. Cir. 1987), the District of Columbia Circuit Court of Appeals readily rejected the ignorance of the law argument:

> Generally, as Holland concedes, ignorance of the law does not serve as an excuse for criminal conduct. The narrow exception to this rule is found where legislation criminalizes "wholly passive" conduct by a person who is "unaware of any wrongdoing." *Lambert v. California*, 355 U.S. 225, 228 . . . (1957). *Lambert* itself emphasizes the narrowness of this exception: "There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition. . . . The rule that 'ignorance of the law will not excuse' . . . is deep in our law. . . ." *Id.* (citations omitted). Due process does not require the prosecution to prove that a drug trafficker had actual knowledge of section 845a.

As to the argument that section 845a was constitutionally infirm because it did not require proof that the drug trafficker had knowledge of his proximity to the school, the *Holland* Court noted that Second Circuit cases rejecting the argument, including *U.S. v. Falu*, 776 F.2d 46 (2nd Cir. 1985), were fully reconcilable with the United States Supreme Court decision in *Liparota v. United States.* 471 U.S. 419 (1985), a case Saxton relies on in this Court. The *Holland* Court noted that

> *Liparota* was concerned with a food stamp statute which provided "that 'whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations' is subject to a fine and imprisonment." . . . The Supreme Court held that in order to violate this statute, the government must prove that the accused knew that his or her use,

5

transfer, acquisition, alteration or possession was unauthorized. . . . The Court emphasized in reaching this result that this construction is particularly appropriate where . . . to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct. . . [and that] requiring *mens rea* [here] is in keeping with our longstanding recognition that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity" . . . Although the rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress, it provides a time-honored interpretive guideline when the congressional purpose is unclear.

The rationale of *Liparota* does not apply to the present case. Section 845a does not criminalize a broad range of apparently innocent conduct. Nor would it be appropriate to apply the rule of lenity here, where the application of it would "undercut [the] unambiguous legislative design" of this section.

810 F.2d at 1223 (citations omitted). The *Holland* Court's discussion of

legislative intent with regard to the federal statute is particularly noteworthy

because Kentucky's own drug trafficking statutes are modeled on federal law.[2]

It is easily concluded here that Congress' heightened interest in protecting children from both the indirect and the direct perils of drug traffic amply supports its decision not to require a showing of *mens rea* of the proximity of a school. A reasonable person would know that drug trafficking is subject to stringent public regulation because it can seriously threaten the community's health and safety, particularly as it

---

[2] The Kentucky Penal Code revision was in draft form when comprehensive federal drug abuse prevention and control legislation was adopted in 1970 and became a model for the Uniform Controlled Substances Act. That uniform act was the basis for KRS Chapter 218A adopted by the Kentucky General Assembly in 1972. R. Lawson & W. Fortune, *Kentucky Criminal Law* § 18-1(a)(1)(1998) (Lawson & Fortune). KRS 218A.1411 was adopted in 1992 but, as noted, closely follows a comparable federal statute.

> relates to the community's heightened concern for the health, safety and welfare of its children. And because knowledge of section 845a is presumed in law, it is reasonable for Congress to have expected drug traffickers to ascertain their proximity to schools and remove their operations from these areas or assume the risk for their failure to do so.

810 F.2d at 1223. Numerous federal and state courts have similarly rejected constitutional challenges to statutes increasing the penalties for trafficking in controlled substances in or near schools despite the absence of any requirement that the actor know of his proximity to a school. *See, e.g., United States v. Cross*, 900 F.2d 66, 69 (6th Cir. 1990); *United States v. Haynes*, 881 F.2d 586, 590 (8th Cir. 1989); *United States v. Pitts*, 908 F.2d 458, 461 (9th Cir. 1990); *State v. Morales*, 539 A.2d 769, 775-76 (N.J. Super. 1987); *State v. Coria*, 839 P.2d 890, 895-96 (Wash. 1992). Thus, we address Saxton's specific arguments with awareness that KRS 218A.1411 contains no express requirement, or even suggestion, that the Commonwealth must prove that a drug trafficker knew of his proximity to a school and, further, with an understanding that the absence of a *mens rea* as to the proximity issue poses no federal constitutional issues.

Saxton premises his first argument on KRS 501.030 and 501.020(2), two statutes contained in the "General Principles of Liability" section of the Kentucky Penal Code. The Penal Code consists of KRS Chapters 500 to 534. *See* KRS 500.010. As noted, all criminal offenses relating to controlled substances are codified outside of the Kentucky Penal Code in a separate, largely self-contained chapter of the Kentucky Revised Statutes, KRS Chapter

7

218A. Thus, initially, we note that it is questionable whether Kentucky Penal Code provisions can be deemed to dictate principles applicable to the controlled substance offenses contained in KRS Chapter 218A. Saxton urges that the general principles of liability applicable to Penal Code offenses must apply, however, because KRS 218A.015 essentially imports them by stating: "*When used* in this chapter, the terms "intentionally," "knowingly," "wantonly," and "recklessly," including but not limited to equivalent terms such as "with intent," shall have the same definition and the same principles shall apply to their use as those terms are defined and used in KRS Chapter 501." (emphasis supplied). However, none of these mental states is "used" in KRS 218A.1411, (indeed, that is the very issue that is before us), so it is difficult to conclude that a statute that makes no mention of "intentionally," "knowingly" or any of the other mental states somehow imports Penal Code principles relating to those mental states.

Assuming arguendo that somehow this importation did occur, Saxton's argument is simply unavailing. He notes that KRS 501.030(2) provides that a person is not guilty of a criminal offense unless he acts with the requisite mental state "with respect to each element of the offense." However, in its entirety, KRS 501.030 provides:

> A person is not guilty of a criminal offense unless:
>
> (1)     He has engaged in conduct which includes a voluntary act or the omission to perform a duty which the law imposes upon him and which he is physically capable of performing; and

8

(2) He has engaged in such conduct intentionally, knowingly, wantonly or recklessly as the law may require, with respect to each element of the offense, except that this requirement does not apply to any offense which imposes absolute liability, as defined in KRS 501.050.

Again, the law at issue in this case, KRS 218A.1411, does not specifically require the actor to act intentionally, knowingly, wantonly or recklessly with regard to the locale of his drug transaction. Instead, it incorporates all forms of "unlawful" trafficking (a reference to other provisions of KRS Chapter 218A) and makes engaging in that otherwise illegal act potentially subject to harsher penalties if it occurs within sufficient proximity to a school.[3] Read literally KRS 218A.1411 does not require any mental state, just otherwise unlawful trafficking within a particular physical area or zone. Given the absence of mention of any mental state in KRS 218A.1411, KRS 501.030(2) cannot be read to require imputation of a "knowing" mental state.

Saxton couples his KRS 501.030 argument with citation to the Penal Code definition of "knowingly" set forth in KRS 501.020 (2): "A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists." While admittedly "knowingly" can be applicable to a circumstance, it plainly is not applicable to the specific circumstance identified in KRS 218A.1411, proximity to a school, because the legislature did not employ the term. In short, "knowingly" could have easily been inserted in the

---

[3] As commentators have noted, the penalties for other trafficking crimes in Chapter 218A are "sufficiently high to limit the applicability of this offense to cases involving first-time offenders in third-degree trafficking or trafficking in small amounts of marijuana . . . ." Lawson & Fortune, § 18-2(a)(3).

9

statute along with "unlawfully" if that was the legislative intent but, as with the Federal statute and those of many sister states, it was not.

KRS 501.030(2) references an "absolute liability" offense as defined in KRS 501.050, a statute that Saxton also focuses on as evidence that KRS 218A.1411 must be construed to include a "knowing" mental state. KRS 501.050 states:

> A person may be guilty of an offense without having one (1) of the culpable mental states defined in KRS 501.020 only when:
> (1)   The offense is a violation or a misdemeanor as defined in KRS 500.080 and no particular culpable mental state is included within the definition of the offense; or
> (2)   The offense is defined by a statute other than this Penal Code and the statute clearly indicates a legislative purpose to impose absolute liability for the conduct described.

Saxton argues vigorously that the legislature did not intend to create an absolute liability offense when it passed KRS 218A.1411 and then uses that principle to introduce his argument that a culpable mental state must be required. We would agree that the statute is not an absolute liability statute as those are typically understood because the culpable mental state is supplied by the trafficking statutes themselves, all of which require the actor to act "knowingly and unlawfully". A *mens rea* for the person's conduct is thus incorporated requiring proof by the Commonwealth to that effect but, again, the statute is silent as to any additional requirement of proving a *mens rea* as to the fact the drug transaction is being conducted in close proximity to a school. The fact that KRS 218A.1411 is not an absolute liability offense does not lead to Saxton's desired result, *i.e.*, it does not mean *a fortiori* that an

10

unlawful drug trafficker must know that he is conducting business in close proximity to a school before he can be subject to the harsher penalty potentially imposed by that statute.

Finally, Saxton argues that the language in KRS 501.030(2) regarding "each element of the offense", when read in conjunction with United States Supreme Court precedent, leaves no doubt that a "knowing" mental state must be applied as to the drug trafficker's proximity to a school. As noted above, there is no mental state expressed in KRS 218A.1411 and KRS 501.030(2) is clear that the requirement of a mental state "with respect to each element of the offense" must be "as the law may require . . . ." Additionally, as noted, the KRS Chapter 501 statutes have limited application to non-Penal Code offenses. Even assuming these statutes apply, KRS 501.040 provides: "Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense or with respect *to some* or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state." (emphasis supplied). Thus, even within the Penal Code, there is recognition that a culpable mental state may not be required as to an element of the offense. That is exactly how the Kentucky General Assembly drafted KRS 218A.1411, with no culpable mental state as to the proximity to a school. Moreover, proximity to a school is not "conduct" as referenced in the closing language of KRS 501.040 and thus does not "necessarily involve [a] culpable mental state." Rather, prohibited proximity to a school is a circumstance that

11

can lead to harsher punishment for otherwise illegal conduct, drug trafficking, regardless of the trafficker's knowledge of the nearby school.

Saxton's U.S. Supreme Court precedent is similarly unavailing. In *Flores-Figueroa v. United States*, __U.S.__, 129 S. Ct. 1886 (2009), a federal identity theft statute provided aggravated penalties for one who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another." The defendant was convicted for using a social security card and an alien registration card that contained his lawful name but social security and registration numbers assigned to another person. The Supreme Court construed "knowingly" in the statute to modify not only the verbs but also "the object of the sentence" and, therefore, the government was required to prove that the defendant knew that the identification numbers he used belonged to another person. The *Flores-Figueroa* decision is very clearly premised on careful consideration of the statutory text and principles of ordinary English grammar.

> There are strong textual reasons for rejecting the Government's position. As a matter of ordinary English grammar, it seems natural to read the statute's word "knowingly" as applying to all the subsequently listed elements of the crime. The Government cannot easily claim that the word "knowingly" applies only to the statutes (sic) first four words, or even its first seven. . . .
>
> * * * * * *
>
> In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the

12

sentence. Thus, if a bank official says, "Smith knowingly transferred the funds to his brother's account," we would normally understand the bank official's statement as telling us that Smith knew the account was his brother's. Nor would it matter if the bank official said "Smith knowingly transferred the funds to the account of his brother." In either instance, if the bank official later told us that Smith did not know the account belonged to Smith's brother, we should be surprised.

129 S. Ct. at 1890.

Focusing similarly on the words employed in KRS 218A.1411, it is abundantly clear that the legislature chose not to use the "knowing" mental state which Saxton advocates anywhere in the statute. The statutory construction issue before us is wholly unlike *Flores-Figueroa* because it is not a matter of determining which elements of the offense are modified by the stated mental state that introduces the statute. Saxton's other United States Supreme Court precedent is also distinguishable. *See Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) (statute that applied to one who "knowingly uses intimidation or physical force, threatens or corruptly persuades another person . . . with intent to . . . cause or induce" that person to withhold testimony or documents in an official proceeding requires, as a matter of linguistics and in light of the entire statutory scheme, that the person "knowingly . . . corruptly persuade"); *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) (statute that applies to any person who "knowingly transports or ships" any visual depiction "which involves the use of a minor engaging in sexually explicit conduct" requires the person to know the person

13

depicted is a minor because *inter alia* the age of the performer is a crucial statutory element separating legal innocence from wrongful conduct and the legislative history supports that construction).

Just as these cases focus intently on the language of the statute, *Love v. Commonwealth*, 55 S.W.3d 816 (Ky. 2001) began with the language of the third-degree assault statute, KRS 508.025(1). That statute applies to a person who "[r]ecklessly, with a deadly weapon or a dangerous instrument, or intentionally causes or attempts to cause physical injury to . . . a state, county, city or federal peace officer." This Court held that given the *mens rea* language employed by the General Assembly and KRS 501.030(2), discussed above and applicable to Penal Code offenses, a defendant cannot be convicted of third-degree assault unless he is shown to have actual knowledge of the victim's status as a peace officer, although such knowledge could be proven through circumstantial evidence. *Love* is distinguishable in much the same manner as the United States Supreme Court cases, *i.e.*, the conclusion regarding *mens rea* as to the challenged element is derived from the very language chosen by the legislature. In this case, Saxton has no basis in KRS 218A.1411 from which to extrapolate a requirement that the proximity to a school be known by the defendant.

These cases bring us full circle to the real issue before us, namely the legislative intent with respect to KRS 218A.1411. Discerning and effectuating the legislative intent is the first and cardinal rule of statutory construction. *Toy v. Coca Cola Enterprises*, 274 S.W.3d 433, 434 (Ky. 2008). KRS 218A.1411

14

contains no indication whatsoever that the legislature intended for the enhanced punishments to apply only if the drug trafficker knew that he was within 1,000 yards of a school. Saxton's attempt to impart a *mens rea* has no basis in the statutory language and none of the KRS 501 statutory provisions or distinguishable United States Supreme Court cases require a contrary conclusion. As the *Holland* court aptly noted in concluding that the federal statute prohibiting unlawful distribution of controlled substances in or near schools applied regardless of the defendant's knowledge, the possibility that the drug transaction will be within the proscribed proximity of a school is simply a risk that the drug trafficker assumes; his knowledge, or lack thereof, is irrelevant. 810 F.2d at 1223.

## II. Saxton Was Not Entitled to a Directed Verdict of Acquittal on His Entrapment Defense and Thus No Palpable Error Occurred.

Alternatively, Saxton seeks entry of a judgment of acquittal on the grounds that the Commonwealth failed to disprove entrapment and thus he was entitled to a directed verdict. He posits that there was no evidence that he had in the past, would have on September 7, 2006 or would in the future traffic marijuana at the Days Inn or any other location within 1,000 yards of the school but for police entrapment. He readily acknowledges that this argument was not presented to the trial court and seeks palpable error review.

KRS 505.010 defines entrapment as follows:

> (1) A person is not guilty of an offense arising out of proscribed conduct when:
> (a) He was induced or encouraged to engage in that conduct by a public servant or by a person acting in cooperation with a

15

public servant seeking to obtain evidence against him for the purpose of criminal prosecution; and

 (b) At the time of the inducement or encouragement, he was not otherwise disposed to engage in such conduct.

(2) The relief afforded by subsection (1) is unavailable when:

 (a) The public servant or the person acting in cooperation with a public servant merely affords the defendant an opportunity to commit an offense; or

 (b) The offense charged has physical injury or the threat of physical injury as one (1) of its elements and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

(3) The relief provided a defendant by subsection (1) is a defense.

Because entrapment is a defense, the "Burden of Proof – Defenses" statute, KRS 500.070, is applicable. That statute provides in subsection (1) as follows:

> The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt, except as provided in subsection (3). This provision, however, does not require disproof of any element that is entitled a "defense," as that term is used in this code, unless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal.

Thus before the Commonwealth can be deemed to have the burden of disproving a defense, the evidence supporting that defense must be of such probative force that if the Commonwealth does not meet it with countervailing evidence, the defendant would be entitled to a directed verdict of acquittal. In fact, as Saxton maintains, citing *Wyatt v. Commonwealth*, 219 S.W.3d 751 (Ky.

16

2007), it is only after the defendant has shown that there is evidence from which a rational jury could conclude that he was induced by the government to commit a crime he was not otherwise predisposed to commit, that the burden shifts to the Commonwealth. The defendant need not testify in order to invoke the entrapment defense (Saxton did not testify in this case) but there must be sufficient other evidence of record to justify an instruction on entrapment, *Wyatt, supra* or, in this case, evidence of "probative force" to justify the directed verdict of acquittal under KRS 500.070(1) to which Saxton claims he was entitled.

Significantly, Saxton cites to no probative evidence of record that would support his entrapment defense, requiring the burden to shift to the Commonwealth. Saxton's suggestion to the contrary notwithstanding, the mere fact that the confidential informants set up the drug transaction for a location within 1,000 yards of a school does not suffice as probative evidence of entrapment to drug traffic in violation of KRS 218A.1411. On the contrary, the evidence plainly shows that Saxton was predisposed to traffic illegal drugs; he had access to the drugs, acquired them and came prepared to sell them at the location suggested by the confidential informants, with all the risks that location entailed. Moreover, there is nothing from which a rational jury could conclude that Saxton's conduct was induced by the government and he would not have otherwise sold marijuana within 1,000 yards of a school.

Perhaps aware of the deficiencies in any proof of entrapment, Saxton states, rather confusingly, that it "logically follows" that if the Commonwealth

17

fails to produce any evidence that "the defendant was disposed to commit the criminal act prior to first being approached by government agents",[4] a directed verdict of acquittal is in order. This is not logical nor is it Kentucky law. As explained above, the burden of producing, or at least identifying, probative evidence of entrapment rests in the first instance with the defendant and Saxton does not articulate any way in which he met that burden by citing the requisite evidence of probative value either to the trial court on a directed verdict motion or even to this Court as a premise for palpable error review.

Palpable error review presupposes that an error has occurred but that it was not properly preserved for our review. Kentucky Rule of Criminal Procedure 10.26. As noted, no error occurred with respect to Saxton's alleged entrapment defense given the plain language of KRS 500.070(1). The burden simply never shifted to the Commonwealth to disprove entrapment.

## CONCLUSION

Appellant Orlando Saxton's arguments for imparting a "knowing" mental state to the school proximity circumstance expressed in KRS 218A.1411 are unavailing. The plain language of the statute contains no *mens rea* and this legislative choice to impose harsher penalties for otherwise unlawful trafficking

---

[4] This is a partial quote from *Wyatt* which cited the following from *Commonwealth v. Day*, 983 S.W.2d 505, 508 (Ky. 1999): "where the government has induced an individual to break the law and the defense of entrapment is raised, the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by government agents" (*citing Jacobson v. United States*, 503 U.S. 540, 549 (1992)). Inducement occurs when police or someone acting in cooperation with them conceives a "criminal design" and lures another into committing an offense he was not otherwise disposed to commit. 983 S.W.2d at 508.

18

in a particular location or zone, without regard to the trafficker's knowledge regarding the proximity of a school, offends neither Kentucky law nor constitutional principles. Accordingly, Saxton's KRS 218A.1411 trafficking conviction is not subject to reversal on the grounds that the Commonwealth did not prove his knowledge regarding the proximity of the drug transaction to Graves County High School. As for his entrapment defense, Saxton is not entitled to palpable error review because no error occurred. Pursuant to KRS 500.070(1), the burden of disproving the defense never shifted to the Commonwealth and, consequently, even if Saxton had moved for a directed verdict on that ground it would have necessarily been denied. Where there is no error, there can be no palpable error. We therefore affirm the judgment and sentence imposed by the Graves Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jamesa J. Drake
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane  Suite 301
Frankfort KY  40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

David Wayne Barr
Assistant Attorney General
Office of Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort KY  40601-8204